May it please the Court. My name is Herb Grieman. I'm here on behalf of David Whitworth, who appeals from the judgment sentencing him to basically 25 years in prison. This case, Your Honors, begins with the filing of the indictment, at least the problems that Mr. Whitworth faced. As the Court may be aware, this was an 11-count indictment. The 11th count of the indictment charged Mr. Whitworth with receiving child pornography over a two-month period of time. The first 10 counts of the indictment, unlike the 11th count, charged Mr. Whitworth with conduct on specific dates and times, in this case over four days, having obtained, produced, child pornography on 10 different occasions. In other words, what happened was the indictment charged Mr. Whitworth with everything that he could have been charged with in the Western District and more. Can I focus on the appellate waiver? I'm sorry, Your Honor? Can I focus on the appellate waiver? Sure, Your Honor. So the district court, Justice Kretny, I believe, repeatedly mentioned during the colloquy relating to the stipulation that the stipulation contained an appeal waiver, and that Mr. Whitworth verbally confirmed his understanding that at least it contained the appeal waiver, and you claim that that appeal waiver was insufficient and not knowing or voluntary. But I wonder what else should the district court have done or said, and if it should have done or said something more, have we ever held that more is required? And that's why I raise it as the first point in our brief, because I understand that that's the position I have to get past before you get to the second sentence. Well, that's why I'm asking that as the first question. I understand that, Your Honor. Your Honor, the bottom line is this. Procedurally, Mr. Whitworth had pled guilty initially. He had pled the appellate waiver. That's correct, Your Honor. And Judge Kretny mentioned on, I believe, two, maybe three occasions that he preserved by pleading guilty, he preserved his right to appeal, that he would have the right to appeal no matter what sentence the court imposed. So as you're in the course of answering Judge Loyer's question, which we all want to hear the answer to, could you just sort of do a timeline as to when this appeal occurred, and give us a record that informs us of why that arose at a time, to me at least, I would say significantly later than the Rule 11 proceeding? I don't know that I can give you a timeline, Your Honor, because the record — what happens here, and I can give you the timeline by basically telling you what the facts are. Obviously, early around, I think in 2014, maybe May of 2014, Mr. Whitworth pled guilty without any appeal waiver. What happens is, the pre-sentence — and obviously the defense took the position, a strong position, that the government's PIM and TELL letter was not going to be correct. At least, she assumed that the probation department would agree with her, and would find that the offense level, the adjusted offense level, would be 31, 108 to 135, as opposed to 320 years as suggested by the government. Well, the pre-sentence report was prepared. I'm going outside the record a little bit on this, Your Honor, but there were four — I believe three or four separate pre-sentence reports which were done. The one that — before the Court, the one that was there at sentencing was the last one, obviously, which was, I think, the fourth amended or revised pre-sentence report. I'm not 100 percent sure, but I wasn't — I wasn't involved in the case at that time. So what happens is, the pre-sentence report comes out. The — Mr. Whitworth's former counsel then moves to withdraw for obvious reasons, because she felt — she suggested that she had a conflict, and I think that she felt that she had given information or advice to Mr. Whitworth which did not pan out. That is, that the guidelines would come back to 108 to 135 under the 15-year mandatory minimum, which would hopefully make it easier for him to get the mandatory 15 years as opposed to 320 years. So that's when Judge Scrutiny asked me to come into the case, and — because it was a mess. I mean, you know, I walk into a bad situation because I have a client who's pled guilty, thinking that — obviously, the advice he had received, thinking that he's going to receive a sentence closer to 15 years, and now he's told that the advisory guideline range is 320 years. Sotomayor, let me try to short-circuit this just a little bit, and I appreciate your efforts to answer my fairly broad question, but I'd like to get back to Judge Loyer's question. So essentially, there was an effort made to try to cabin in some respect the range within which Judge Scrutiny could impose a term of imprisonment. Through a stipulation. That's correct.  That's correct, Your Honor. All right. So now back to Judge Loyer's question. What's wrong with what — I think I've got this right. What's wrong with what Judge Scrutiny did at the time that it became pertinent that there had been also an appeal waiver added to what had already taken place at the Rule 11 proceeding? I think it was incumbent upon — and I say this with due respect to Judge Scrutiny — but I think it was incumbent upon Judge Scrutiny to do two things. Number one, to explain that things had changed and that the initial advice that he gave to Mr. Whitworth, saying, don't worry, you're going to have the right to appeal, is no longer going to be valid. That was not done in this case. There's no mention of it that going back and saying, A, now you're at B, forget about — you know, forget about A, forget about the suggestion that I made to you. He didn't do that. Number two is that, in looking at the cases, I believe it's clear that simply saying that you signed a waiver of your right to appeal, in and of itself, is insufficient, especially in light of the facts of this case, because that's pretty much what the judge did. He mentioned it, that he had signed a stipulation and mentioned that he had waived his right to appeal, and then he mentioned that he had waived his right to appeal not only the sentence, but he also indicated that he had waived his right to appeal any argument for ineffective assistance of counsel that he could ever make. So the Court proceeded after he said, you understand, you — there's appeal right, you've waived your right to appeal, and Mr. Whitworth responds — your client responds, yes, Your Honor, and then the Court proceeded and said, and when you signed this stipulation, you were fully advised, is that correct? And he responded, yes, Your Honor. And that's insufficient in your view? Your Honor, respectfully, I do. I really do. I believe, given the circumstances here, and just mentioning that, Judge Grettany mentioned it one other time, but after he had already imposed a sentence, he said you have a right to appeal, but you waived your rights, but that was at the tail end of the proceedings. The rule, for lack of a better term, that you want us to endorse, and you say that we elliptically endorsed it, I think, in U.S. v. Reddy, is that if there was a prior plea hearing at which it was made clear to a defendant that he or she had not waived their right to appeal and could appeal, then any subsequent plea hearing or similar proceeding where there's a plea and a sentence would have to entail, if there's more by way of referring back to the prior hearing and saying, I told you two and a half years ago that you had a right to appeal, but this stipulation forecloses that, and so on. Is that the rule? That is my position, Your Honor, and I think that I'd ask the Court not to forget, and I know you won't, but I say it maybe rhetorically, not to forget what he was up to at that point in time. He had been advised to take a plea to the entire indictment, an indictment that stacked each individual photograph, unlike the 11th count of the indictment which did not. Let me ask you sort of a separate but slightly related question. Assume that the March 2014 plea hearing had not occurred, and that the first time that Judge Scrutiny addressed Mr. Witwert was in October 2016, with the benefit of this stipulation, would you still have the same position? That is, would you still argue that what Judge Scrutiny did in the context of that just that hearing was not enough? Yes, Your Honor, and I say that because I say, number one, that the Court, you know, you're right, Your Honor, but that the Court didn't go far enough, if it was simply the second procedure or the second proceeding, that the Court did not go far enough in terms of advising what it meant to waive your right to appeal. It was exacerbated by the first part of it and the fact that he had already told him, I understand, two years before, two and a half years before, that he had a right to appeal. Is there a case that you can cite to us outside of the, you know, the Reddy case, which really, I think, had to do more with separate proceedings? Is there a case that you can cite to us where in a standalone proceeding, we've required more than just allocuting a defendant to, do you understand that you've waived your right to appeal as set forth in the stipulation? The only case that we could locate was the case cited by us in U.S. v. Reddy. I don't think that I saw another case where these unusual circumstances took place, where in the same proceeding, this was not a situation where the plea was withdrawn and he replied to something. This is the same proceeding from start to finish. He pled guilty and is being sentenced based upon his guilty plea where the Court indicated to him you've maintained your right to appeal. I thought the Court actually said you probably have a right to appeal. Isn't that what Judge Scranton said at the first hearing? At the first hearing, I don't think so, Your Honor. In any event, he did not waive his right to appeal. You probably still have the right to appeal, but your guilty plea remains. I could look it up in two seconds if you want me to, Judge, and you probably know the word better than I do because I think you have it right in front of you. So I'll buy it, Your Honor. Well, assuming that's what he said, does that change anything? I don't think so, Your Honor. I think that because not only did he probably have the right to appeal, he clearly did maintain the right to appeal because he had not waived his right to appeal. So I think that that's the case. Well, by signing the stipulation, he did something. Oh, I understand that, Your Honor. You're not saying he lied when he signed the stipulation and said, you know, I'm disavowing or I can disavow all of that. No, he did not, Your Honor.  I think the reason that you're asking me to do this is he wasn't adequately advised by the Court in some manner required by Rule 11 now that he had waived his right to appeal and what that meant. Yes. I think that that's true, Your Honor. And I think that for him, maybe I have personal feelings about it, but for him the issue was overwhelming. When he got the presentence or he received the presentence report and was told that if things stay the way that they are and if the judge doesn't depart or vary from the guidelines, you're looking at going to jail for the rest of your life. And something that I don't think that the Commissioner or anybody else would have envisioned that for, it's a serious crime, it's an egregious crime. I'm the first one to say that. But for this type of crime that he should be sentenced virtually to a life sentence of imprisonment, I don't think anybody would have. Do you know what the range was that they were first talking about? I'm sorry, Your Honor. What was the range of months they were first talking about in the first, in the presentence report that happened at the time of the guilty plea? It came out for different reasons to a different guideline calculation than what the government had thought, but it still came back to a level of 44, which is what he wound up with. They just got to it for different reasons. In other words. You've lost me now. I thought you were saying that when he pled guilty, he thought he was going to have a much lower sentence. That's correct. And I was wondering what that much lower sentence was. Oh, well, he believed, he was told that by his lawyer, it was clear, put on the record, he was told by his attorney that she believed the guideline range was 108 to 135 months, an offense level of 31, Your Honor. Thank you. I just forgotten those numbers. No, not a problem. Thank you, Your Honor. I think I'm way beyond my time and I don't know if I can. That's right. You've, you will give you two minutes for rebuttal still, Mr. Greenman. So thank you. Thank you very much, Your Honor. Ms. Baumgarten. Good morning. May it please the court. I think the guidelines that the other defense counsel advocated or thought was under the impression was 180. I'm not sure that it was 108. I think it was. I wasn't the trial assistant below. I'm just on the appellate. Yes. This is a contract. This is a contract provision and the appellate waiver, not only within the colloquy by the court, but also within the stipulation itself on paragraph 6, the stipulation that the defendant signed upon the advice of my esteemed counsel, my esteemed appellate counsel here, who went through it verbatim with him and averred that on the record. That's true. That's true of every plea agreement. There's language about a plea waiver. We still require district court judges to allocute a defendant, and we've actually said that they should pay special attention to the waiver provision. I don't disagree. And in this particular case, I think we all agree here that this is an unusual procedural context because what the government foretold in its Pimentel statement actually occurred. It was a guidelines range of essentially life, 320 years. If you could have said more, that would have been very helpful. Is that correct? Yes. I agree. Okay. So why don't we proceed to the merits? But with respect to the substantive reasonableness of the sentence, in this particular case, we respectfully disagree with how it's characterized by defense counsel. I think that prior defense counsel did a very voluminous sentencing memoranda, analyzes the facts very differently than the government looks at them. I appreciate that the defendant was not in the room with the young girls that he solicited very invasive, multiple images of child pornography. These young children did what he directed them to do, and as a result, they inserted all kinds of things into their orifices that are dehumanizing and terrible, and the argument that it might somehow be different because they were a little bit older, I look askance at that argument, but in this particular case, the government did engage in a post-plea analysis with the benefit of new defense counsel to try to address that situation and change the calculus of what the defendant was looking at in terms of his sentencing exposure to take that into account, and essentially what he agreed to, he got. He agreed to 292 to 365. I understand, Your Honor, the questions aside about the adequacy and could the district court have done more on the issue of the appellate waiver. I agree. And when you say you agree, I want to explore this a little bit more. What more should have Judge Scrutiny done? That is, particularly in the context of the prior March 2014 plea. He could have asked him directly. He could have said to him, you understand that in your prior plea I told you that you were, he could have done that. I don't think it's necessary for this court's analysis. I respectfully advance that position, Your Honor. I'm not conceding the point, but had the court actually asked. That would have given us more confidence that Mr. Whitworth understood what was happening. Yes. The point that I bring the court back to is not just the appellate. Once again, the unusual context of this, Your Honor, is the defendant had the many permutations of the PSR that defense counsel at that time, Mr. Greenman, reviewed with him that day also. Within the PSR itself, it talks specifically about the modification, the change in the procedural landscape, and says the defendant previously entertained and advanced objections. And by entering into this stipulation, he is waiving his right to appeal, and he's in a new range set forth within the stipulation. I realize, Your Honor, that that is not what the judge specifically asked. I, I. So you, would the government agree that this falls under US v. Reddy in a sense, that we've already more or less written about this? I wouldn't necessarily go that far, Your Honor. I think there could have been a more direct inquiry or colloquy of Mr. Whitworth that would have put this to rest. I think we probably still would have been here, because it's obvious that there's disappointment that the sentence was imposed where it was, even forecasting that it was just eight months above the low end of the range. But I, I would agree that the judge could have asked it directly. Unless you have other questions, I'd, I'd be happy to, to address them. All right. Thank you. Thank you, Ms. Baumgarten. Mr. Greenman. I just wanted to correct one thing that I said. I don't know if I, what I said was wrong, but maybe not complete. The court asked me what was told to Mr. Whitworth, and I said to you, and she did indicate that she felt that the offense range was a 31 with, I'm sorry, an offense level was 31 with a 108 to 135. But she also recognized that he couldn't do better than 15 years. In other words, there was a 15 year mandatory minimum here.  I apologize I didn't give you the whole story. I appreciate counsel's candor with regard to Your Honor's questions, and I obviously think that the court could have done more. But talking about the substantive issue and the sentencing issues, you know, these cases always raise the eyebrows of many people. They're difficult cases, frankly, for defense attorneys to represent because you walk into a court and nobody, nobody is going to indicate that they have any compassion for what winds up happening in a case like this. But that being said, this court has written on a number of occasions recently about what courts should do in terms of the child pornography line of cases. And I understand that Mr. Whitworth did more than simply possess child pornography. Mr. Whitworth encouraged a young girl to send him photographs. These are the ten photographs which are the subject of the indictment over a four-day period of time. So we understand that the real court ---- Kennedy, you solicited or the production of or produced child pornography. That's correct, Your Honor. You made that sort of a not quite a bright line, but as close to a bright line as you can make it. Well, I understand that, Your Honor. But, you know, in this case, because he pled guilty under 2251, he was looking at what raised the situation for him was that he was looking at a 15-year mandatory minimum. And if you look at this case in all fairness, had the indictment charged him with all ten of the productions, the four days, the ten photographs, in one count, he wouldn't have been looking at 320 years in jail. He'd have been looking at a mandatory ---- I'm sorry, a maximum sentence of 30 years in jail. And if you're working off what should have been, in my opinion, the 30 years, and you're working off that, how close is 25 years to the 30 years and how close do the sentences need to be to the 30 years? I can't help but think that the sentencing court had difficulty here because, you know, you're looking at a stipulation that changes 320 years, at least in an advisory guideline range, to something which is closer to 25 to 30 years. But the question really comes down to the fact, what were the circumstances and what were the 3553A factors which the court considered? The court really focused on one thing and one thing only. He mentioned the fact that Mr. Whitworth had some strong psychological issues. He was sexually abused as a child. His father left him and abandoned him, and then his mother died suddenly, and his mother was his entire life, and he fell into a period of depression. The court really didn't get into that, mentioned it, but focused on one thing. And the court focused on the fact that Mr. Whitworth, during his interview with Dr. Rutter, had indicated that his focus, the, I guess, the closeness or the attraction that he had was not to the children who he had solicited these photographs, but to older women. And Judge Scrutiny seemed to focus on that and seemed to use that as the basis for saying, I don't think you get it yet, I don't think you're where you're supposed to be yet because I'm not buying what you're saying, even though Dr. Rutter, who is an accomplished sexual offender therapist and is a doctor of psychology, Dr. Rutter considered everything and said, that isn't his focus. And the court seemingly just said, I don't buy it. And from what you can tell from the record, that seems to be why the judge went higher than even the lowest end of the stipulated guideline range. I'm sorry, Your Honor. Sotomayor, it's our standard of review for that argument. Is it fair to you? An abuse of discretion, I agree with that, Your Honor. But I respectfully do believe that the court, with due respect, I practice before this judge all the time. I have nothing but high regard for him. But the bottom line is, I think that in this case, I think that the court abused its discretion by focusing only on one factor, seemingly only on one factor, and disregarding and saying, I don't buy Dr. Rutter's report. I don't buy that you're low risk to re-offend. I don't buy that you're, that. How do we review that? I mean, we review that for clear error, do we not? I think it was clear error, Your Honor, for the court simply to say, I don't buy it, when the only thing that he's saying is, to controvert it, is, I think, I personally think that you have interest, had an interest, a prurient interest in these younger girls than you're saying, and therefore, here you go from here. So we think that the court should have considered a sentence lower. And the one thing, and I'll finish up here, is that we argue both procedural and substantive reasonableness issues. The procedural issue is, of course, that even though the objections had been withdrawn in order to get to the stipulations, I believe that the court certainly had to make a determination whether the guideline range was, in fact, correct, legally correct. And I don't think that the court necessarily made that determination. And substantively, I think we've all talked about that. Thank you very much, Your Honor. Sotomayor, let me just add, I assume since Judge Scrutiny got you to step in, or the court got you to step in, you're here as a CJA counsel? I am, Your Honor. We want to thank you for that. Although I seem, I tend to submit any vouchers I have very late, Your Honor. Mr. Tritz has some issues with me, Your Honor. But my partners, Your Honor, have taken me to task for the whole thing. But I guess I think that the work is more important than getting paid. I don't know why I do that, Your Honor. But that's how I am. Thank you very much. Thank you. Thank you both for your arguments. Helpful. The final case, as I said earlier, Johnson v. Commissioner of Social Security, is on submission. So I will ask the clerk, please, to adjourn court. Let me get the chair.